The GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA

v.

Alfred E. TILLINGHAST.

No. 84–30–Appeal.

Supreme Court of Rhode Island.

July 17, 1986.

G. Quentin Anthony (Sheffield & Harvey), Newport, for plaintiff.

Milton Stanzler/Jonathan L. Stanzler (Abedon Michaelson Stanzler & Biener), Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court following trial by jury in favor of The Guardian Life Insurance Company of America (Guardian). The case arose from an action brought by Guardian seeking rescission of an insurance policy covering income disability on the ground that Alfred E. Tillinghast (Tillinghast) had made material misrepresentations on his application. Tillinghast counterclaimed for benefits due under the policy. Guardian had tendered the premium to Tillinghast after concluding that he had failed to disclose pertinent information, but the tender was refused. We affirm. The facts of the case as pertinent to this appeal are as follows.

On June 22, 1976, Tillinghast applied for a disability-insurance policy to be issued by Guardian. In his application he responded to the examining physician, Dr. Barry Steinberg, that he had not been treated for any disease or disorder of the brain or nervous system and that he had not been treated for "rheumatic fever, elevated blood pressure, angina pectoris, chest pain or discomfort, shortness of breath, heart murmur, swelling of legs or ankles, or any disease or disorder of the heart or blood vessels[.]" The examining physician noted on the application that Tillinghast indicated that he had been admitted to Newport Hospital in 1966 with chest pain, that he was discharged the same day, and that he had no recurrence of such pain. The physician testified that no other treatments or conditions had been communicated to him by Tillinghast, otherwise he would have noted them on the application. Tillinghast signed the application beneath a representation that "all the statements and answers to the above questions are complete and true to the best of my knowledge and belief."

During the trial, evidence was adduced that Tillinghast had been admitted to Day Kimball Hospital in Connecticut on May 31, 1975, complaining of chest pain. This pain was associated with the lifting of a five-gallon can of paint. However, the history given in connection with this hospital admission by Tillinghast included a statement by Tillinghast that he had suffered a "coronary" ten years ago in Newport but was in the hospital for only two days. The history further disclosed that Tillinghast supposedly had had an abnormal electrocardiogram during this hospital stay and had three to four admissions to the hospital for chest pain since that time. The hospital-discharge report noted a history of "arteriosclerotic heart disease with previous myocardial infarction * * *."

Evidence was further introduced to show that Tillinghast had applied for treatment at the Veterans Administration Hospital in 1975, complaining of headaches, memory lapses, and stomach and back problems. Tillinghast also stated that during 1975, he had received counseling from a social worker at the Veterans Administration Hospital for problems arising out of marital and job stress. In addition, Tillinghast further stated that on June 26, 1976 (four days after having completed the Guardian insurance application), he applied for treatment at Newport Hospital, complaining of left anterior chest pain, episodes of confusion, and headaches and dizziness, which he stat-

ed had occurred over the previous few months.

Tillinghast and his former wife testified that he had made more disclosures to Dr. Steinberg than appeared on the application. Both Tillinghast and his former wife testified that during the year before signing the insurance application he had had chest pain and emotional problems, that Tillinghast had been seen regularly at the Veterans Administration Hospital for nervousness, and that he had prescriptions for Valium, Dalmane (a sleeping medication), and Tylenol for his aches and pains.

An underwriter employed by Guardian testified that if the company had known of Tillinghast's admission to Day Kimball Hospital in 1975, it would have ordered a current electrocardiogram before determining his eligibility for insurance. It would have postponed action on the policy until a more definite diagnosis could be obtained.

At the time of trial, which began November 1, 1983, both parties conceded that Tillinghast was totally disabled. The reason for the disability is not entirely clear. Tillinghast testified that he had been assaulted on December 23, 1976, while working at a campground in Chepachet, Rhode Island. The records of Newport Hospital where he received treatment following the incident stated that he had a "syncopal episode" and had fallen on his face. A syncopal episode may be defined as "[a] temporary suspension of consciousness due to cerebral anemia; a faint." Dorland's Illustrated Medical Dictionary 1484 (24th ed. 1965). Tillinghast testified that he did not remember giving such information to hospital personnel and that he had no real recollection of the events that occurred at the campground. Evidence indicated that he had been seen at the Veterans Administration Hospital in January 1977 and that he had a fainting spell and had fallen down a ravine on December 23, 1976. Tillinghast testified that he only learned later that he had been assaulted by a man.

At the conclusion of the testimony, Tillinghast moved for a directed verdict. The trial justice reserved decision pursuant to Rule 50(b) of the Superior Court Rules of Civil Procedure and submitted the case to the jury, citing the provisions of G.L.1956 (1979 Reenactment) § 27–18–16, which provides:

> "False statements in application.—The falsity of any statement in the application for any policy covered by this chapter may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."

The jury returned a verdict in favor of Guardian, whereupon the trial justice denied the motion for directed verdict. He later denied Tillinghast's motion for a new trial. In support of his appeal, Tillinghast raises five issues that will be considered in the order of their significance to this opinion.

I

DID THE TRIAL JUSTICE ERR IN PRESENTING ISSUES OF FACT TO THE JURY BASED ON G.L.1956 (1979 REENACTMENT) § 27–18–16 IN LIGHT OF THE FACT THAT GUARDIAN HAD ALLEGED FRAUDULENT AND INTENTIONAL MISREPRESENTATION?

When the request for instruction was submitted to the trial justice, Tillinghast suggests that in effect Guardian amended its pleadings by requesting that the jury make only two determinations: (1) had Tillinghast made false statements? and (2) did those false statements materially affect the acceptance of the risk or the hazard assumed?

No mention was made in the request for instructions with respect to such elements of fraud as knowledge of falsity or intent to deceive. The trial justice submitted the questions to the jury in accordance with the requested instructions of Guardian. No formal motion to amend the pleadings was made pursuant to Rule 15(b) of the Superi-

or Court Rules of Civil Procedure. The provisions of § 27–18–16 were not set forth in Guardian's complaint.

In effect, Tillinghast argues that one who alleges fraud in his pleadings must prove fraud or be precluded from recovery on his claim. This rule is one of considerable antiquity and was recognized by this court in *Tillinghast v. Champlin,* 4 R.I. 173 (1856), in which Chief Justice Ames cited a broad range of English precedents in support of the proposition that one who relies upon fraud cannot recover even though another ground might be disclosed in the evidence that would entitle a complainant in equity to relief. However, this somewhat stringent rule has been greatly palliated since 1856. We have stated in *Cofone v. Narragansett Racing Association, Inc.,* 103 R.I. 345, 237 A.2d 717 (1968), that a variance between allegations and proof have much less significance since the adoption of the rules of civil procedure in the Superior Court.

More significantly in *Halpert v. Rosenthal,* 107 R.I. 406, 267 A.2d 730 (1970), we allowed relief by way of rescission of a contract for the sale of real estate on the ground of an innocent misrepresentation by the vendor concerning freedom from termites of the house to be conveyed. It is notable that in *Halpert* the purchaser pleaded an intentional misrepresentation of fact but at trial was able to prove only an innocent misrepresentation. This court did not perceive the variance as having significance, especially in light of the fact that no objection was made to the evidence presented on the ground of variance. In the case at bar, it is reasonably obvious that no objection could have been made to the introduction of evidence since all of the evidence presented would be relevant both to a fraudulent misrepresentation and to the misrepresentation made without fraudulent intent to deceive. It was not until the request for instructions was presented that the variance became apparent. At that time Tillinghast's counsel did make objection. However, it is also true that the complaint gave Tillinghast ample notice of any evidence that was presented at trial. The only element of which notice was not given in the complaint was the relevancy of § 27–18–16.

■ We are of the opinion that in the absence of extraordinary circumstances wherein the pleading of a statute may be particularly required, *see Battista v. Muscatelli,* 106 R.I. 514, 516–17, 261 A.2d 636, 638 (1970), it is not necessary for a plaintiff to plead statutes of which the court may take judicial notice. *See* G.L.1956 (1985 Reenactment) § 9–19–1.

■ We have held in *Kenney v. Providence Gas Co.,* 118 R.I. 134, 372 A.2d 510 (1977), that a party should not be precluded from recovery on the ground that his proof did not conform to his pleadings unless there is a showing of extreme prejudice. Not to allow an amendment pursuant to Rule 15(b) in circumstances when such prejudice is not shown would constitute an abuse of discretion. 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1495 at 478–80 (1971). In the case at bar no amendment was requested because no evidence was presented that did not conform to the pleadings. The problem encountered here is the propriety of submitting the case to the jury on a theory that required no proof of intentional fraud. We do not perceive that the submission of this issue by the trial justice caused any "extreme prejudice" to Tillinghast. The pleadings gave Tillinghast full notice that Guardian sought rescission on the ground of misrepresentation. Knowledge of the existence of § 27–18–16 was as accessible to Tillinghast's counsel as it was to Guardian's counsel.

We do not perceive that the rigid rule established in the Court of Chancery in England should be applied in the case at bar to deny rescission to a party that has established grounds therefor. We regard the allegation of fraud in this instance as mere immaterial surplusage. *See State v. McParlin,* 422 A.2d 742 (R.I.1980).

Consequently, the trial justice did not err in presenting the case to the jury in light of the provisions of § 27–18–16.

## II

### DID THE TRIAL JUSTICE ERR IN DENYING TILLINGHAST'S MOTION FOR DIRECTED VERDICT?

Tillinghast argues in support of this issue that a misrepresentation made without knowledge of falsity is insufficient to support rescission. This argument is rendered ineffective by the terms of § 27–18–16, which rather clearly points out, at least by negative inference, that a false statement that materially affects the acceptance of the risk will bar recovery. Our analysis of the previous issue is sufficient to establish that there was no basis upon which the trial justice could appropriately have directed a verdict in favor of Tillinghast unless he had applied the outmoded doctrine that one who alleges fraud must prove it or otherwise cannot recover. We believe that the analysis applied in *Halpert v. Rosenthal, supra,* is equally applicable to the case at bar. In that case after an extensive consideration of principles set forth in 12 *Williston on Contracts* §§ 1487, 1500 and 1510 (3d ed. Jaeger 1970), as well as in Restatement *Contracts* §§ 470 and 476 (1932), the court summarized the doctrines as follows:

> "A misrepresentation, even though innocently made, may be actionable, if made and relied on as a positive statement of fact. The question to be resolved in determining whether a wrong committed as the result of an innocent misrepresentation may be rectified is succinctly stated in 12 Williston, *supra,* § 1510 at 462 as follows:
>
> > 'When a defendant has induced another to act by representations false in fact although not dishonestly made, and damage has directly resulted from the action taken, who should bear the loss?'
>
> "The question we submit is rhetorical. The answer is obvious. Simple justice demands that the speaker be held responsible." *Halpert,* 107 R.I. at 415, 267 A.2d at 735.

■ Consequently, even without the aid of a statute such as § 27–18–16, we have concluded that a material misrepresentation, even though innocently made, is a basis for rescinding a contract.

The Supreme Court of New Hampshire, interpreting a statute somewhat similar to § 27–18–16, though not identical, held in *Taylor v. Metropolitan Life Insurance Co.,* 106 N.H. 455, 214 A.2d 109 (1965), that it was unnecessary to show fraud in the event that a false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

This court recognized in *Prudential Insurance Co. of America v. Tanenbaum,* 53 R.I. 355, 365, 167 A. 147, 150–51 (1933), the following principle:

> "It is generally held that a representation as to a material fact which is false in fact need not have been fraudulently made. * * * In *Leonard v. State Mutual Life Assurance Co.,* 24 R.I. 7 [1902], in reply to plaintiff's claim that an untrue answer did not avoid the policy because innocently made, the court said: 'falsity, not fraud, is the basis of liability on a warranty.' It was held that: 'The answer being untrue, and being a part of the contract and relating to a matter within the knowledge of the applicant, it must be regarded as a material misstatement which avoids the contract.' "

■ In light of our own statute and precedent, we see little need to analyze cases from other jurisdictions that purport to interpret statutes that bear little or no relationship to our own. Suffice it to say that the trial justice did not err in declining to grant Tillinghast's motion for a directed verdict.

## III

### DID THE TRIAL JUSTICE ERR IN ALLOWING THE TESTIMONY OF AN UNDERWRITER WHO TESTIFIED CONCERNING THE EFFECT OF CERTAIN INFORMATION UPON THE RISK TO BE ASSUMED?

Tillinghast argues that the underwriter, Robert Astarita, was allowed to testify con-

cerning medical matters in respect to which he had no expertise. We are of the opinion that Tillinghast misconceives the underwriter's testimony. His expertise is in the area of the assumption of risks by insurance companies. He simply stated that if the company had been given notice of certain symptoms manifested by Tillinghast during his admission to Day Kimball Hospital in 1975, the company would have postponed issuance of a policy pending more certain diagnosis based upon further medical tests.

■ Consequently, the issue upon which Astarita was allowed to testify was an issue well within the area of his expertise as an underwriter. It was not necessary for him to have medical knowledge in order to recognize potential underwriting problems. He testified only that this underwriting problem would not have been resolved without more definite medical information.

The trial justice did not err in allowing such testimony.

## IV

DID THE TRIAL JUSTICE ERR IN ADMITTING THE APPLICATION FOR INSURANCE INTO EVIDENCE IN LIGHT OF G.L.1956 (1979 REENACTMENT) § 27–18–14?

Tillinghast argues in support of this issue that Guardian's exhibits 3 and 7 (part 1 and part 2 of the insurance application) should not have been admitted because on the back of part 2 there was a section entitled "Medical Examiner's Report," which bore the signature of Dr. Steinberg. Apparently Tillinghast was given a copy of part 1 and 2 of the application, but he was not given the back side of the report that had been filled out by Dr. Steinberg. The trial justice held that the medical examiner's report was not part of defendant's application and that therefore § 27–18–14 did not apply. This section reads as follows:

"Copies of applications.—The insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof. If any such policy delivered or issued for delivery to any person in this state shall be reinstated or renewed, and the insured or the beneficiary or assignee of such policy shall make written request to the insurer for a copy of the application, if any, for such reinstatement or renewal, the insurer shall within fifteen (15) days after the receipt of such request at its home office or any branch office of the insurer, deliver or mail to the person making such request, a copy of such application. If such copy shall not be so delivered or mailed, the insurer shall be precluded from introducing such application as evidence in any action or proceeding based upon or involving such policy or its reinstatement or renewal."

■ We are of the opinion that Guardian complied with the requirements of the statute and that the trial justice was correct in determining that the medical examiner's report was not part of Tillinghast's application.

## V

DID THE TRIAL JUSTICE ERR IN DENYING TILLINGHAST'S MOTION FOR A NEW TRIAL?

■ We have examined the trial justice's decision denying the motion for a new trial and find that he has fulfilled all of the requirements set forth in *Barbato v. Epstein*, 97 R.I. 191, 196 A.2d 836 (1964), and its progeny. Under this standard the trial justice's exercise of independent judgment cannot be disturbed unless the trial justice overlooked or misconceived relevant evidence or was otherwise clearly wrong. An examination of the record indicates that the trial justice's findings were amply supported by the testimony and other evidence adduced at the trial. His decision denying

the motion for a new trial was not erroneous.

For the reasons stated, the appeal of Tillinghast is denied and dismissed, and the judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.