[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter was tried by the Court without intervention of a jury on January 20 and 21, 2004. The plaintiff, Summit Insurance Company, ("Summit") filed a declaratory judgment action to void a policy of insurance ab initio due to a material misrepresentation of fact on the application for insurance made by defendant Porcaro.
The defendant Fitchburg Mutual Insurance Company, ("Fitchburg") claims that the plaintiff is estopped from denying coverage to its named insured Patrick Porcaro, and seeks a contribution from the plaintiff for an award of damages made as a result of an automobile accident which occurred on April 25, 1999 which was made in favor of the defendants Anthony J. Fargnoli, Rhonda Fargnoli and Vincent Caprarelli. Defendant General Motors Acceptance Corp., ("GMAC") seeks indemnification from the satisfaction of this judgment, averring that judgment is clearly the responsibility of both Summit and Fitchburg.
 Travel of Case
On November 1, 1996 Andrea Porcaro leased a car from GMAC. On April 25, 1999, Vincent Caprarelli and Christine Caprarelli were involved in a motor vehicle accident with defendant, Patrick J. Porcaro. The automobile owned by GMAC and driven by Porcaro struck the rear of the Caprarelli's vehicle while stopped at a traffic light. The incident resulted in the filing of the underlying lawsuit, Caprarelli v. Porcaro, et al. C.A. No. 00-2001. Judgment on the verdict entered on June 27, 2003 for Vincent Caprarelli in the amount of $432,404.00, and for Christine Caprarelli in the amount of $26,151.41, including interest and costs.
Defendant Fitchburg had issued a policy of insurance to Patrick and Andrea Porcaro which was in effect on the date of the accident. In accordance with the lease agreement between Patrick Porcaro and GMAC, Fitchburg was obligated to and did defend both the driver (Porcaro) as well as the owner of the vehicle (GMAC) in the Caprarelli matter.
On April 21, 1999, four days preceding the accident at issue, the Porcaros submitted written applications to plaintiff, Summit for a personal automobile insurance policy and an umbrella liability policy without canceling coverage with Fitchburg. Summit asks the Court to declare the policy issued to the Porcaros by Summit to be void ab initio because of the alleged misrepresentations made by the Porcaros on the insurance application concerning Patrick Porcaro's driving record. Fitchburg argues Summit's policy was in effect at the time of the accident and that Summit should, at least, share in the judgment. Summit contends it had no duty to defend or indemnify Mr. Porcaro or the vehicle owner, GMAC, and has brought this action for declaratory judgment to resolve the dispute. Unlike Fitchburg, however, Summit refused to defend Mr. Porcaro and GMAC in the underlying lawsuit.
Prior to the Caprarelli trial, Fitchburg was given the opportunity to settle both claims within the Fitchburg policy limits of $250,000.00. Fitchburg chose to decline the settlement and proceed to trial. As noted above, the jury returned a verdict for Vincent Caprarelli in the amount of $432,404.00, and for Christine Caprarelli in the amount of $26,151.41 including interest and costs.
Andrea Porcaro testified that she and her then husband, Patrick Porcaro, had their businesses insured with the agency of Butler 
Messier, Inc., ("Butler"), Mr. Porcaro having had a personal relationship with agency head Roger Messier.
When Ms. Porcaro was purchasing a new vehicle, Mr. Porcaro suggested that she call Mr. Messier about auto insurance and homeowners, and a personal umbrella policy to bring all of their personal and business insurance to Butler.
On April 16, 1999, Ms. Porcaro called Butler about the insurance referenced above. Ms. Porcaro was known to Butler employees because of the business insurance and Ms. Porcaro dealt most often with Lynn Pimental. Ms. Porcaro testified that she spoke with Ms. Pimental that day and was asked basic questions necessary to fill out an application for auto insurance.
Ms. Pimental asked Ms. Porcaro about her driving record over the last three years concerning accidents, violations and tickets. Ms. Porcaro responded that her driving record was fine.
Ms. Pimental testified that she heard Ms. Porcaro ask her husband Patrick how his driving record was. Ms. Pimental testified that she heard Patrick respond to Ms. Porcaro that his driving record was fine.
It is undisputed that Ms. Pimental did not ask to speak to Mr. Porcaro to inquire about his driving record. Ms. Porcaro denies that Ms. Pimental's inquiry was specific as to Ms. Pimental's inquiry of the Porcaros driving record over the last 3 years.
Ms. Porcaro testified that she had a second conversation with a Butler employee, Janice Beauregard. Ms. Beauregard in 1999 was employed at the agency doing office sales and personal lines. Ms. Porcaro testified that after eliciting more specific information regarding the insurance application, including Ms. Porcaro's driving record, that Ms. Beauregard asked to speak to Mr. Porcaro. Ms. Porcaro testified that her husband was at a different location in the business and that he spoke to Ms. Beauregard for no more than two minutes. Ms. Porcaro believed that Ms. Beauregard was asking Mr. Porcaro for his license number (which Ms. Porcaro did not know), and about his driving record. Mr. Porcaro did not testify at all in this trial.
Ms. Beauregard in her testimony has denied speaking with Mr. Porcaro prior to April 25, 1999 and that she met Ms. Porcaro for the first time on April 21, 1999 when Ms. Porcaro came to the agency to sign the applications.
Ms. Porcaro did go to Butler on April 21, 1999 and testified that she met with Ms. Beauregard, but did not go over each application in detail with Ms. Beauregard, that all she was asked to do was to sign or initial the applications at various places pointed out to her by Ms. Beauregard.
Ms. Porcaro testified that she paid for the insurance by check and received a binder to take with her to the auto dealer.
Ms. Beauregard testified that she did meet with Ms. Porcaro on April 21, 1999, and that she did review in detail the three applications, auto, homeowners and personal umbrella, and received additional information from Ms. Porcaro in order to complete the application.
Ms. Beauregard testified that she did review the driving records of both Mr. and Ms. Porcaro with Ms. Porcaro at that time. Ms. Beauregard testified that if Ms. Porcaro had told her abut Mr. Porcaro's driving record, Ms. Beauregard would not have submitted the application to Summit because Ms. Beauregard knew that Summit had very high underwriting guidelines.
It is undisputed that Ms. Porcaro did sign the applications on April 21, 1999. There is some question as to when Ms. Porcaro actually picked up the vehicle from the dealer but no dispute that she had received the binder from Butler necessary to do so. The binder in question was printed on a standard form, not one printed by Summit.
Ms. Beauregard testified that she ordered a Motor Vehicle Report (MVR) driving record for the Porcaros after she received the check from Ms. Porcaro on April 21, 1999. She testified that this was common practice at the agency because it cost $10.00 for the report, and if a policy did not issue, the agency would be out the $10.00. Ms. Beauregard testified that she saw the MVR report on April 23, 1999, that while it was dated April 22, 1999, it had been faxed to the Agency overnight by the MVR.
Ms. Beauregard testified that Mr. Porcaro's MVR contained evidence of speeding tickets, moving violations and an accident within the prior three years making Mr. Porcaro ineligible for the underwriting guidelines of Summit. She testified further that she then ordered a CLUE report on the Porcaros regarding their insurance application. This report was not received by the Agency until April 26, 1999.
Upon receipt of the MVR report of Mr. Porcaro, Ms. Beauregarad and one Stephanie, another employee of Butler, went to see Mr. Roger Messier about the report.
It is undisputed that from the issuance of the binder by Butler on April 21, 1999, there was no contact with the Porcaros by any one from Butler or from Summit until the accident report was received by Butler on April 26, 1999.
Ms. Beauregard testified that upon receipt of the MVR report on Mr. Porcaro, an attempt was made to place the Porcaro's insurance with CNA Insurance Company, but that those efforts were not successful.
Roger Messier is the owner and president of Butler Messier, Inc. In his testimony at trial it was revealed that he is also President and Chairman of the Board of AIG, Agent Investors Group, Inc., which at the time of this incident owned a controlling interest in Summit. Mr. Messier was instrumental in hiring Mr. Al Perreira to be President of Summit and also was influential in setting Mr. Perreira's salary. Mr. Messier testified that Butler was authorized to bind insurance coverage for Summit. Mr. Messier also testified that he did nothing to put the Porcaros on notice that they would not be covered by Summit, despite the fact that he knew the Porcaros phone and fax numbers.
On April 26, 1999, after receiving the report of Mr. Porcaro's accident, Mr. Messier advised Mr. Perreira, President of Summit to cancel the policy regarding the Porcaros.
Ms. Porcaro had testified that she reported the accident of April 25, 1999 to Butler on April 26, 1999. Ms. Porcaro doesn't recall if she spoke to Mr. Messier first or not, but she did eventually do so and Mr. Messier registered great surprise and dismay at learning of the accident involving Patrick Porcaro.
Mr. Messier denies that he spoke to Ms. Porcaro on April 26th, the Monday morning. He testified that he spoke to Ms. Porcaro on the next day, the Tuesday. Mr. Messier also testified that he, not Ms. Beauregard, called Mr. Perreira to have him cancel the policy on the Porcaros.
Mr. Albert J. Perreira was called as a witness in this case. He is the President and Chief Operating Officer of Summit Insurance Company and has been since 1994. Summit does business exclusively through its authorized independent agents in Rhode Island which is 18 in number. He acknowledged that Butler is appointed and authorized to do business for Summit. Mr. Perreira testified that its authorized agents have the authority to issue a binder of coverage as long as the prospect meets the underwriting guidelines. Summit and the agent must notify the Company of its binder within five days order for the company to recognize the coverage extended.
Mr. Perreira also testified that once he was notified that there was evidence of a material misrepresentation in the processing of a binder, he would move to void the binder in accordance with the legal notice requirements of the State of Rhode Island
Mr. Perreira testified that upon receipt of the information of the driver's ineligible driving record or history, the Company would void the policy as it has done in this case. Both Mr. Messier and Mr. Perreira described in detail the notice requirements which were followed in this case in order to void the policy and binder issued to the Porcaros.
There are various interests presented in this Declaratory Judgment action.
One central question is whether or not Summit cancelled the binder of insurance issued to the Porcaros because their application was based on a material misrepresentation by the Porcaros in the application process, and whether or not this was an appropriate cancellation by Summit.
Another question, which is the position of defendant Fitchburg, is whether or not Butler, as an authorized agent for Summit, had knowledge of the driving record of Patrick Porcaro which should be imputed to Summit, thereby estopping Summit from canceling the policy effectively issued on its behalf by and through its agent, Butler.
In this case, there appears to be no question other than that Patrick Porcaro had a driving record as disclosed by the MVR of speeding tickets, a suspended license and an accident which were on Mr. Porcaro's record during the three years preceding his application for insurance with Butler. The evidence is also uncontroverted that this record would preclude the issuance of an insurance policy by Summit because of the Company's stringent underwriting guidelines as testified to by Mr. Perreira, Ms. Beauregard and Mr. Messier.
From the earliest days of Rhode Island Jurisprudence — the rule regarding a policy of insurance which has been issued upon a misrepresentation of material fact is that the policy so issued is "utterly void". See Carpenter v. American Ins. Co., 5 . Cas. 105 (1839). "A. misrepresentation of a material fact, whether it be made through mistake or design, avoids a policy of insurance underwritten on the faith thereof". See also Evorav. Henry, 559 A.2d 1038 (R.I. 1989).
In the case at bar, it is difficult to ascertain whether or not the representation regarding Patrick Porcaro's driving record was made out of ignorance or with design. A large part of the reason for this is the largely informal manner in which the application process was engaged in between the Porcaros and Butler. Whether occasioned by a laisse faire attitude born out of a course of prior dealing, or from a desire to write and meet all the insurance needs, business and personal, of the Porcaros, there is no question that the procedure engaged in by Butler was lax at best.
It is difficult for the Court to really determine whether or not the applications were actually reviewed by Ms. Beauregard and Ms. Porcaro, item by item as declared by Ms. Beauregard, or whether Ms. Porcaro merely initialed and signed the application without review as averred by Ms. Porcaro. Regardless of the method or means there are two uncontroverted facts. The first is that the applications revealed no problems with Patrick Porcaro's driving record, and in fact stated there were none, and there was still some information not filled in on the application which might have been accomplished if a close review of the applications had been pursued.
There is also no question, however, that Ms. Porcaro signed the application attesting to the veracity of its contents. There is also evidence on the record that Ms. Porcaro was aware to more than a slight degree, that her husband had problems with his driving record as evidenced by her payment of fines on his behalf from her checkbook.
The defendant, Fitchburg, avers that Summit automobile policy #01003127 was in full force and effect for the April 25, 1999 loss; and that Summit is estopped from raising certain rights and privileges as to the driving record of Patrick Porcaro since it would be inequitable to permit the denial of coverage under the circumstances. In this case, the Porcaros relied on the fact that an insurance binder was in effect and coverage would be provided by Summit; and that Summit and its agent intentionally induced this reliance by not advising the insureds that the motor vehicle report would not meet the underwriting guidelines of Summit. More importantly, Summit and its agent never told the insureds that there would be no coverage due to misrepresentations, even after full disclosure of Patrick's driving record.
"In order to argue a claim of estoppel successfully, a plaintiff must show that the defendant by some affirmative conduct or representation, intentionally induced the plaintiff to act or fail to act in detrimental reliance on that conduct or representation." Marinelli v. Travelers, 687 A.2d 443, 447 (R.I. 2996).
"The key element of an estoppel is intentionally induced prejudicial reliance." East Greenwich Yacht Club v. CoastalResources Management Council, 376 A.2d 682, 686 (R.I. 1977).
The defendant, Fitchburg Mutual Insurance Company, argues that:
 Notice to an insurer's agent, or knowledge obtained by him or her while acting within the scope of his or her authority, is notice to or knowledge of the insurer with respect to material facts affecting the risk, and the insurer is estopped from asserting the invalidity of the policy at the time it was issued, for violations of any of the conditions of such policy, if, at the time it was so issued, the fact of such violation was known to the company or its duly authorized agent, especially where the insurer has acted to its advantage because of such knowledge." Couch, 3rd ed., pp 49-3 and 49-4.
Fitchburg argues that Summit is bound by the actions of its authorized agent, Butler Messier, Inc., in connection with obtaining information to complete the application form.
The defendant, Fitchburg advances this theory because of the position of Mr. Messier with the AIG Investors Group which owns a substantial interest in Summit, and because he was instrumental in the hiring and salary structure of Mr. Perreira as President and CEO of Summit.
There is no question that Butler was a duly authorized agent of Summit as admitted by Mr. Perreira and by the full exhibits in this case.
While there is no doubt of the close association of Mr. Messier with both Mr. Perreira and Summit, Mr. Messier is not a principal in or director of that company, nor is Summit bound by Mr. Messier's actions.
In this case, the preponderance of the evidence which is credible in this case, is that Butler, in its course of dealing with Mr. Mrs. Porcaro, were acting as agents for the Porcaros in the placement of their insurance.
That upon learning of the driving record of Mr. Porcaro Butler knew the application of insurance to Summit would not be accepted.
The Court finds as a fact and concludes as a matter of law, that the misrepresentation by the Porcaros in the automobile application of insurance was indeed material. That the withholding of information by the Procaros that Mr. Porcaro had several speeding tickets, been involved in an automobile accident, and had his license suspended in a three year period prior to the application is a material misrepresentation. The credible evidence in this case causes the Court to conclude that the risks connected with Mr. Porcaro's driving record as exposed by the MVR could have materially affected Summit's determination to issue an insurance policy to Mr. Porcaro.
There is uncontroverted evidence on the record that Mr. Porcaro's application for insurance would not have been accepted by Summit, and the Court finds as a fact that the misrepresentations under the totality of the circumstances were a material misrepresentation to Summit by the Porcaros.
"A material misrepresentation even though innocently made, is basis for rescinding a contract and does not require a showing of fraud." Guardian Life Ins. Co. of America vs. AlfredTillinghast, 512 A.2d 855 (RI 1986).
The Court finds as a fact that the testimony of Ms. Beauregard and Ms. Porcaro was not forthcoming on the issues of fact described by each during the trial concerning the application process.
The Court finds the testimony of Ms. Pimental with regard to her course of dealing with Ms. Porcaro, and eliciting the initial information from Ms. Porcaro to be credible, particularly as to the testimony of Ms .Pimental regarding the driving records of Mr. and Mrs. Porcaro, and how Ms. Pimental initially received the information.
The Court finds further that the course of dealing of Butler in the processing of the Porcaros application was woefully inadequate, particularly the complete lack of concern on the part of Mr. Messier with 40 years of experience in the insurance industry, regarding any attempt to contact the Porcaros with reference to the problem with their insurance application from the time the information was received until after the accident.
The gravemen of this case, however, lies in the material misrepresentation made by the Porcaros to Butler. Whether innocently made or by contrivance, the Court cannot determine with a degree of certainty. However, the "abinitio" misrepresentation cannot be overlooked as the root cause of this controversy.
A good faith rendition of any pertinent facts, particularly regarding a prospective insured's driving record should be able to be relied upon by an insurance agency in the ordinary course of business.
Accordingly, the Court finds for the plaintiff Summit Insurance Company that the insurance coverage for the accident in question was appropriately denied and that the claim of Fitchburg Insurance Company is denied; that no coverage shall be afforded to the defendants, Patrick and Andrea Porcaro under said policies issued by the plaintiff, Summit, regarding the claims and damages sustained by defendants, Vincent Caprarelli and Anthony Fargnoli, arising out of the accident of April 25, 1999; that the plaintiff has no duty to defend the defendants, Patrick and Andrea Porcaro, in any actions brought against them by the defendants, Vincent Caprarelli and Anthony Fargnoli arising out of the accident of April 25, 1999; and that the plaintiff has no duty to indemnify the defendants, Patrick and Andrea Porcaro, or satisfy any judgments brought against them by the defendants, Vincent Caprarelli and Anthony Fargnoli arising out of the accident of April 25, 1999.
Further, this Court determines that any determination concerning the rights and/or liabilities of defendant GMAC shall be severed from this cause of action to be tried, if necessary, separately pursuant to Rule 42(b) of the Rules of Civil Procedure.
An Order may enter consistent with this Decision.