324 A.2d 671.

LAURA E. RICARD *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *et al.*

AUGUST 2, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an action under a group life creditor

insurance policy. Originally the plaintiff filed two complaints, one against the defendant John Hancock Mutual Life Insurance Company (Hancock) for the amount allegedly due to the defendant Industrial National Bank of Rhode Island (Industrial) under the policy and the other against the bank for negligence in the processing of the application for the mortgage insurance and for failure to pursue available remedies after the death of the plaintiff's husband.

Both defendants filed motions to dismiss pursuant to Super. R. Civ. P. Rule 12(b). The motions were granted by a Superior Court justice on November 15, 1968, but plaintiff was given leave to amend her complaint. After she filed an amended complaint, defendants renewed their motions to dismiss. The motions were heard by another justice of the Superior Court and denied on June 9, 1969.

On June 22, 1972, the case was reached for trial before still another justice of the Superior Court. During the pretrial conference, Hancock again moved to dismiss on basically the same grounds it had previously asserted. The plaintiff did not object and, notwithstanding Industrial's objection, the trial justice granted the motion to dismiss with prejudice.

The case proceeded to trial before a jury against Industrial alone. At the conclusion of plaintiff's case, Industrial, without resting, moved for a directed verdict under Super. R. Civ. P. 50(a). That motion was denied and Industrial proceeded with its case. After making an offer of proof of certain evidence which the trial justice had ruled was inadmissible, Industrial rested and then renewed its motion for a directed verdict. The trial justice again denied the motion and submitted the case to the jury, which returned a verdict for plaintiff in the amount of $11,266.85.

After the denial of its motion for a new trial, Industrial filed an appeal from the judgment entered on the verdict. Later, it filed an amended appeal from the judgment entered on the verdict and from the trial justice's ruling dismissing the action against Hancock. No appeal was filed by plaintiff or Hancock.

## The Facts

In December 1965, plaintiff and her late husband, Donat Ricard, applied for and obtained a loan of $6,000 from Industrial, secured by a mortgage on a parcel of real estate owned by them jointly. At the same time the husband completed an application for mortgage insurance under a group policy issued to Industrial by Hancock on the lives of the bank's mortgagors. Someone at the bank had told her husband that in order to get the mortgage loan he had to have insurance because of his age. Industrial denied this. The plaintiff signed the application for the purpose of guaranteeing the premium payments. A premium of $16.32 per month was added to the monthly mortgage payments to the bank. This was the monthly premium payable by a person 61 years of age. It appears that Industrial based the amount of the premium on a schedule of rates in its possession. Under the policy, Hancock insured the mortgage and agreed, in the event of the covered mortgagor's death, to pay to Industrial, the named beneficiary, the then outstanding balance of the mortgage loan, thereby discharging the indebtedness to the bank.

The arrangement between Industrial and Hancock provided that Industrial was to collect the premiums from its mortgagors for transmittal to Hancock. Upon a mortgagor's death it was the bank's responsibility to complete and transmit an application to Hancock for payment under the policy. Industrial received no commissions and played no part in setting the standards for coverage or

532

making decisions regarding the payment of claims. Authority to do those things resided exclusively with Hancock.

Industrial had authority to issue certificates of insurance on behalf of Hancock to eligible applicants who answered the questions in the "Statement of Health Portions" of their application in a certain way, that is, "Yes" to questions one and five, and "No" to questions two, three and four. If the questions were answered in any other fashion, Industrial was required to forward the applications to Hancock which would then determine eligibility itself. The answers furnished by Mr. Ricard fall into the former category. A copy of the application signed by Mr. Ricard, which contains the "Statement of Health Portion of Individual Application," is attached hereto as Appendix A. Mr. Ricard stated in the application that his date of birth was September 21, 1904. Acting in reliance on Mr. Ricard's answers to the questions in the "Statement of Health Portion" of the application, Industrial issued a certificate of insurance to Mr. Ricard. In so doing Industrial admittedly overlooked the fact that Mr. Ricard was 61 years of age, one year older than the limit fixed for eligibility under the terms of the group policy.[1]

Donat Ricard died on December 17, 1966. Industrial filed a claim for death benefits with Hancock, but the latter denied liability.

At the time of Mr. Ricard's death the outstanding principal balance on the mortgage was $5,834.79. The hospital record indicates that death was due to carcinoma of the colon, bronchopneumonia, arteriosclerotic heart disease,

---

[1]The agreement between Industrial and Hancock provided that the class of debtors eligible for life insurance "* * * shall include all persons under age sixty who are indebted to the Policyholder on the effective date of said Policy, and all persons under age sixty at the date of application for a loan and who become indebted to the Policyholder after said date, for a mortgage loan * * *."

congestive heart failure, diabetes mellitus and hypo-chromic microcytic anemia.

The principal reason cited by Hancock in refusing payment was that Mr. Ricard was 61 years old when he applied, and, therefore, was not eligible for coverage. After being asked by Industrial not to disclaim liability on the basis of Mr. Ricard's age, Hancock started an investigation of the claim. Since Mr. Ricard died within the two-year contestable period pursuant to the policy, it had a right to do this. The investigation revealed that during the five-year period preceding his application, Mr. Ricard had been regularly treated for diabetes mellitus, severe hypertension and a heart condition, and that he was taking medication for those conditions. Hancock also learned that Mr. Ricard had been refused life insurance by another company several years before.

After the investigation, both Industrial and plaintiff were advised of the results. Hancock said that it was denying the claim because of Mr. Ricard's failure to disclose on the application his previous medical history. Hancock also reiterated its previous denial because of Mr. Ricard's age at the time he applied for the mortgage insurance. However, the record indicates that Hancock later waived the coverage defenses.

When the claim was denied, all of the premiums that had been paid by the Ricards were refunded. However, Industrial inadvertently continued including the premium charge of $16.32 per month on plaintiff's monthly mortgage statement. No one noticed the error until February 1972 when Industrial called it to plaintiff's attention and tendered her all of the premiums collected during that period. The plaintiff refused to cash the check sent to her and instead included that sum in her claim for damages.

I

*The Motion for a Directed Verdict*

In its first assignment of error Industrial challenges the correctness of the trial justice's denial of its motion for a directed verdict. As previously noted, plaintiff bases her claim of negligence principally on Industrial's acceptance of Mr. Ricard's application despite his ineligibility because of his age, and on its failure to bring some action against Hancock to compel payment.

The trial justice based his denial of Industrial's motion on the ground that its failure to bring action against Hancock was "sufficient evidence that they were negligent and caused the damage to Mrs. Ricard." Industrial argues that the trial justice erred in so ruling because there was no showing of proximate cause between Industrial's alleged negligent acts and the loss claimed by plaintiff.

We find no error in the trial justice's ruling denying Industrial's motion for a directed verdict. Industrial, being the named, and at least in part, an actual beneficiary in the policy, impliedly assumed the responsibility and duty of doing everything reasonably necessary to compel payment of the policy in the event of the covered insured's death, in this case, Donat Ricard's death. In our judgment there was an implied promise by Industrial to take all steps necessary to realize on the policy in such an event. Under the arrangement between Industrial, Hancock, and plaintiff, plaintiff had the right to expect that Industrial would take steps reasonably necessary to compel payment of the policy. Whether plaintiff could, or could not, have sued Hancock directly is of no legal significance. Nor does it matter whether or not plaintiff requested Industrial to bring an action against Hancock. As we view the relationships that came into being here, it was Industrial's duty to plaintiff to take action against Hancock, and plaintiff

had a right to rely on it to perform such duty. However, we believe that plaintiff's theory should be based on Industrial's implied promise, rather than on the theory of negligence, as urged by her.

Since Hancock expressly waived coverage as a defense, Industrial would have been entitled to payment under the policy except for Mr. Ricard's alleged misrepresentation of his previous medical history. But, under our statute,[2] it was for a jury, and not Industrial, to determine whether such misrepresentation contributed to Mr. Ricard's death. *See Paradise* v. *John Hancock Mutual Life Ins. Co.*, 108 R. I. 700, 279 A.2d 453 (1971). If, in an action by Industrial against Hancock, a jury found that the misstatements in the application for the policy did not involve factors which contributed to Mr. Ricard's death, Industrial would have received payment under the policy, plaintiff's indebtedness would have been discharged, and she would have suffered no loss. On this record, the question of whether Industrial's failure to sue Hancock was a breach of its implied promise, and, if so, the further question of whether such breach resulted in a loss to plaintiff, were questions of fact and, consequently, the trial justice correctly denied defendant's motion for a directed verdict.

## II

### *The Dismissal of Plaintiff's Action Against Hancock*

(a) Industrial next contends that the trial justice erred in dismissing plaintiff's action against Hancock. It argues

---

[2] General Laws 1956 (1968 Reenactment) §27-4-10 reads as follows:

"Effect of misstatements in application for policy.—No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury."

that the denial of that motion violated the "Law of the Case" doctrine, in view of the prior inconsistent rulings on similar motions by two other justices of the Superior Court on November 15, 1968 and June 9, 1969.

We shall assume without deciding that Industrial has standing to raise this question. Industrial cites several cases where this court has stated that when a motion involving a pure question of law is denied by one justice of the Superior Court, that ruling becomes the law of the case and should not be disturbed by another justice of the same court absent the development of significant new facts.[3]

The cases cited by Industrial are factually different from the case at bar. All of them involved motions for summary judgment and the party against whom the motion was granted had opposed the motion. But, even if we hold that those cases are applicable here, it does not necessarily follow that the trial justice erred in granting Hancock's motion to dismiss. As the court pointed out in *Payne* v. *Superior Court*, 78 R. I. 177, 184-85, 80 A.2d 159, 163 (1951), the doctrine of the law of the case admits of exceptions and therefore does not have the finality of the doctrine of res judicata. It is, as the court said, a flexible rule; one more in the nature of a rule of policy and convenience, but one that generally ought to be adhered to absent the most compelling and exceptional circumstances. All of the cases cited indicate that a clear alteration of the circumstances since the first decision of the question may also make it advisable that the second

---

[3]*Goldstein* v. *Rhode Island Hospital Trust Nat'l Bank,* 110 R. I. 580, 296 A.2d 112 (1972); *North American Planning Corp.* v. *Guido,* 110 R. I. 22, 289 A.2d 423 (1972); *Columbus Ornamental Iron Works, Inc.* v. *Martin,* 103 R. I. 620, 240 A.2d 405 (1968). *See Payne* v. *Superior Court,* 78 R. I. 177, 80 A.2d 159 (1951).

justice be permitted to pass upon it in the light of the changed conditions.

In the case at bar there has been a development of significant new facts and a clear alteration of the circumstances since the denial of Hancock's motion to dismiss on June 9, 1969. The posture of the case when the motion to dismiss was denied in June 1969 is entirely different from that when the motion was granted in June 1972. In June 1969 plaintiff objected to Hancock's motion to dismiss. On the contrary, in June 1972, plaintiff informed the trial justice that she wanted to consider dropping her claim against Hancock and proceeding alone against Industrial on the negligence claim. Hancock accepted plaintiff's suggestion to make a motion to dismiss her case, with prejudice, and, when made, plaintiff did not object to the motion or to the trial justice's ruling granting the motion. In these circumstances we cannot say that the trial justice erred in granting Hancock's motion to dismiss.

(b) Industrial also argues that the trial justice based his grant of Hancock's motion to dismiss on an erroneous view of the law, namely, that plaintiff had no standing to sue Hancock directly because there was no privity between them. Industrial argues that plaintiff was a third party beneficiary and, as such, had standing to sue Hancock. On the view we take, we need not discuss the authorities and cases cited by Industrial on this question. We need only look at the language of the policy which expressly provides:

> "On receipt of due proof, on its prescribed forms, of the death of the above-named person while insured under said Policy, the Company shall pay to the Bank the amount of life insurance in force under said Policy on his life at the date of his death, and said amount of insurance shall be applied by the Bank toward the discharge of such person's indebtedness under said mortgage loan."

538

In view of the express language in the policy, we cannot say that the trial justice erred in ruling that plaintiff did not have standing, under the policy, to sue Hancock and that the bank was the only proper plaintiff in a case against Hancock.

## III and IV

Under points III and IV of its brief Industrial challenged the correctness of certain rulings during the trial, including rulings excluding certain evidence and denying Industrial's motion to amend its answer. Because we have come to the conclusion that the denial of Industrial's motion to amend its answer was arbitrary and an abuse of discretion of such magnitude as to require a new trial, we shall address ourselves to that issue.

It appears from the transcript that Industrial attempted to introduce evidence relating to Mr. Ricard's health during the five-year period preceding his application. It attempted to show that he had been regularly treated for certain medical conditions and that he had been refused life insurance by another company several years before. Industrial further tried to show that disclosure of those conditions would have resulted in rejection of his application by Hancock in accordance with that company's then prevailing medical standards for eligibility. Finally, Industrial offered evidence that the medical conditions concealed by Mr. Ricard on his application contributed to his death and, therefore, their omission was "material" within the meaning of §27-4-10 and provided the only basis for determining whether his misstatements were "material" within the meaning of §27-4-10.

In refusing to admit the proffered evidence the trial justice relied on the state of the pleadings, specifically, on Industrial's answer to paragraph 12 of the amended complaint. In so ruling he said that to allow such evi-

dence in light of the pleadings would allow Industrial to "change horses and take a different tack." The pertinent paragraphs of the complaint and answer read as follows:

"12. Defendant John Hancock Mutual Life Insurance Company under its policy of insurance, Exhibit A hereto, is indebted to the defendant Industrial National Bank of Rhode Island for the amount of said policy, which in turn should be applied to the mortgage obligation of your plaintiff."

Answer of defendant Industrial National Bank:

"12. Defendant admits the allegations of paragraph 12."

Industrial argues now, as it did before the trial justice, that evidence regarding Mr. Ricard's health should have been admitted under the pleadings as they existed at the time of the trial. However, in an attempt to remove any question as to the admissibility of evidence regarding Mr. Ricard's health, Industrial moved to amend paragraph 12 of its answer to reflect the fact that it was unable to take a position on whether or not Hancock was liable under the policy, namely, by amending its answer in paragraph 12 to read that "defendant neither admits nor denies the allegations of paragraph 12 but leaves plaintiff to her proof thereof."

The trial justice denied Industrial's motion for the same reason he sustained plaintiff's objection to the admission of evidence regarding Mr. Ricard's health, namely, because he felt that the case had gone on too long on the basis of the pleadings as they were at the time of the trial. As indicated above, we believe the trial justice's denial of Industrial's motion to amend was clearly an abuse of discretion requiring reversal and a new trial.

Rule 15(a) provides that after a responsive pleading has been served "* * * a party may amend his pleading only by leave of court or by written consent of the adverse

party; and leave shall be freely given when justice so requires." The granting or denial of such a motion is a matter within the sound discretion of the trial justice, and when he has acted in the exercise of his discretion, his ruling should not be disturbed on review in the absence of a clear showing that he abused his discretion. The true spirit of the rule is exemplified in the words "* * * and leave shall be freely given when justice so requires." See Professor Kent's Commentary in 1 Kent, *R. I. Civ. Prac.* §15.3 at 151 (1969). Judicial liberality in allowing amendments has been the rule even before the adoption of the Superior Court Rules of Civil Procedure. *See Wolf* v. *S. H. Wintman Co.,* 92 R. I. 470, 169 A.2d 903 (1961).

As Professor Kent notes, the identical language of F.R.C.P. 15(a) has been similarly construed. In *Foman* v. *Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Court held that it was reversible error to refuse to allow an amendment to the pleadings, absent some compelling reason. In so ruling the Court spoke as follows:

> "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. * * * If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the

Federal Rules." *Id*. at 182, 83 S.Ct. 'at 320, 9 L.Ed.2d at 226.

In our judgment the plaintiff has shown no compelling reason warranting the denial of Industrial's motion to amend, nor has the trial justice indicated any justifying reason for his ruling. In the circumstances the denial of Industrial's motion was clearly an abuse of discretion and constituted reversible error. Since our ruling on this issue requires a remand, we do not reach, and, therefore, do not decide Industrial's remaining questions.

The defendant's appeal is sustained in part and denied in part, and the case is remanded to the Superior Court for a new trial in accordance with this opinion.

Mr. Chief Justice Roberts did not participate.

*Bourcier & Bordieri, John P. Bourcier,* for plaintiff.

*Moakler & Sherlock, John W. Moakler, John F. Sherlock, Jr.,* for John Hancock Mutual Life Insurance Company.

*Hinckley, Allen, Salisbury & Parsons, Ernest C. Torres,* for Industrial National Bank of Rhode Island, defendants.

INB-MO-21-143

# John Hancock
## MUTUAL LIFE INSURANCE COMPANY
### BOSTON, MASSACHUSETTS

## APPLICATION FOR GROUP INSURANCE ON HOME MORTGAGE LOAN AT
## INDUSTRIAL NATIONAL BANK OF RHODE ISLAND

A. Mortgage No. 18-388:61  Office No. 76  Type & Code No. 61
Date Mortgage Written 12-22-65 Maturity Date 12-22-75 Balance of Mortgage 6,000
Next Due Date 1-22-66

B. Name Ernest Revere  Date of Birth September 21, 1904
Home Address 16 Tobin Street, West Warwick R.I.
                  Street              City              State

☑ This application is for Group Life Creditor Insurance only.
☐ This application is for Group Life Creditor and Accident & Sickness Insurance.

1. Yes___ No___  Are you now able to report to active work on a full-time basis? (A&S only)
2. Yes☑ No___  Do you have any other Mortgage Insurance under this plan?
   Multiple 12-31-65 (Above for Eligibility Purposes Only)

C. STATEMENT OF HEALTH PORTION OF INDIVIDUAL APPLICATION
(To be completed by Mortgagor if required by Group Life Creditor Policy issued to Mortgagee)

1. Yes☑ No___  Are you within the following limits for your height?

| HEIGHT | WEIGHT MINIMUM | WEIGHT MAXIMUM |
|--------|----------------|----------------|
| Under 5'4" | 100 | 175 |
| 5'4" to 5'8" | 110 | 200 |
| 5'8" to 6'0" | 120 | 225 |
| Over 6'0 | 130 | 250 |

2. Yes___ No☑  Have you had any ailment, injury, or disease within the last five years which has resulted in you being away from work ten or more days?
3. Yes___ No☑  Have you during the past five years consulted, been treated or examined by any physician or practitioner, been treated or confined in any hospital, clinic or similar institutions or had any surgical operation?
4. Yes___ No☑  Has any application by you for Life, Accident, or Sickness Insurance been declined or postponed or has such insurance coverage ever been modified?
5. Yes☑ No___  To the best of your knowledge, are you now in sound health?
   NOTE: If Questions 1 or 5 are answered "No" or Questions 2, 3, or 4 "Yes", please explain briefly below:

D. I, the Mortgagor to be Insured, hereby apply for the amount of Group Life Creditor Insurance (and Accident & Sickness Insurance, if applicable) as indicated in Section B hereof for which I am now, or may become eligible under the provisions of the Group policy issued by the John Hancock Mutual Life Insurance Company covering Mortgagors of the previously referred-to Mortgagee. I hereby represent and agree that the foregoing statements are true and complete, are statements of fact and not opinion, and shall be the basis for the insurance issued to me under the Group Creditor Insurance Policy issued to the Mortgagee. I understand that said policy gives the Insurance Company the right to render void the insurance on my life under this policy in the event any of the statements or representations herein are not as stated. I HEREBY ACKNOWLEDGE THAT I HAVE RECEIVED A COPY OF THIS FORM, AND I UNDERSTAND THAT THE INSURANCE WILL BECOME EFFECTIVE IF THIS APPLICATION, HEREBY APPLIED FOR, IS APPROVED BY THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY. I ALSO UNDERSTAND THAT IF I AM ALREADY INSURED UNDER THIS PLAN IN CONNECTION WITH ANOTHER MORTGAGE LOAN MADE BY THE BANK, NO INSURANCE WILL BECOME EFFECTIVE ON THIS APPLICATION.

(See over

(Continued)

I hereby authorize any physician or practitioner to disclose to the Company any and all knowledge or information acquired at any time from any past or future consultation or treatment, and waive any rights with respect thereto. No agent, policyholder or medical examiner is authorized to make contracts, waive or amend policy provisions. Notice to or knowledge of any agent or medical examiner whenever given is not notice to or knowledge of the Company.

E. ☐ I do not wish to have this Group coverage on my mortgage.

F. Dated at *Phenix* ................................. the *22* .............. day of *December* ............... 19 *65*.

.................... *Appraug* .................... .................... *Taken by* .................... *Ernest Ricard* ....................
Office                                         Taken by                         Signature of Mortgagor to be Insured

## PAYMENT OF PREMIUMS

It is understood and agreed by the undersigned that the Mortgagee is authorized to advance and pay to the Company all premiums due on account of Group Life Creditor Insurance (and Accident & Sickness coverage, if applicable) in connection with the mortgage loan referred to herein. All such premiums advanced and paid by the Mortgagee shall constitute obligations of the undersigned to the Mortgagee, and until repaid shall be secured by said mortgage in the same manner as the unpaid principal balance of the mortgage indebtedness and shall bear interest at the same rate as said principal balance.

.................... *Ernest Ricard* ....................
Signature of Mortgagor to be Insured

.................................................................

.................................................................

.................... *Laura C. Ricard* ....................
Signatures of Additional Mortgagors or Guarantors

G.

## PREMIUM CALCULATION

|  | ORIG. AMT. OF INS. | RATE | PREMIUM |
|---|---|---|---|
| Life | 6000 | 2.72 | 16.32 |
| A&S | 65.87 | .015 | 9.88 |
| Total | XXXXXXXXXXXXX | XXXX | $26.20 |