Matthew J. FAERBER

v.

Robert D. CAVANAGH.

No. 88–80–Appeal.

Supreme Court of Rhode Island.

Jan. 11, 1990.

Turner C. Scott, Newport, for plaintiff.

Ina P. Schiff, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before this court on the defendant's appeal from a Superior Court judgment in favor of the plaintiff awarding the plaintiff $2,120.85 in legal fees owed to him plus interest and costs. The sole issue on appeal is whether the Superior Court erred in denying the defendant's motion to file a counterclaim against the plaintiff. We affirm the trial court's decision and deny the defendant's appeal.

The facts relevant to this appeal are as follows. Matthew J. Faerber (Faerber) initiated this contract action for legal fees on December 19, 1972. Faerber had been retained by Robert D. Cavanagh (Cavanagh) in December 1971 to represent him in a divorce proceeding filed by his wife. Faerber did not have Cavanagh sign a retainer agreement. The exact fee arrangement between Faerber and Cavanagh is somewhat unclear since Faerber passed away before the case was tried.[1] Faerber's wife, Sarah J. Faerber, testified on his behalf at trial. She also worked for him as an office manager and was familiar with the office records regarding Faerber's time spent on the Cavanagh case.

Mrs. Faerber did not know how many hours her husband spent on the case. The records kept in the office were used as a guideline in arriving at the bill and were filled in by the secretaries on a day-to-day basis (since lawyers "as far back as then" did not "spend too much time keeping time records"). Mrs. Faerber testified that her husband usually arrived at how much to bill the client by looking at the time spent, the issues involved, the property involved, the amounts at issue, and the results achieved. She stated that Cavanagh was a very difficult client. He would telephone and drop by the office frequently.

On July 24, 1972, Faerber mailed a final bill to Cavanagh for services rendered in the amount of $2,120.85. Their attorney-client relationship had ended in April. The bill listed the services performed by Faerber on behalf of Cavanagh. The last line reflected that Faerber was advised by Cavanagh that another attorney would represent his interest. Faerber turned over all pleadings and pertinent papers to Cavanagh's new attorney.

---

1. The exact date of his death cannot be ascertained from the record. The court reporter transcribed the date as May 2, 1975. However, Faerber signed a motion to assign dated February 27, 1984. A motion to substitute the party plaintiff with the executor of his estate was filed July 31, 1985.

Cavanagh testified at trial that he and Faerber had the type of agreement for fees in which Faerber would tell him in advance what the fee would be, and Cavanagh would pay him as they went along. He was not satisfied with Faerber's services. According to Cavanagh, Faerber did not adequately protect his interests regarding the sale of his farm machinery and livestock because the modified restraining order Faerber drafted did not include the words "farm machinery." Consequently machinery and livestock were sold by Mrs. Cavanagh on March 23, 1972, pursuant to an order of the court because Cavanagh had failed to pay household bills.

Cavanagh alleged that Faerber called him into his office in April 1972. He told him that the matter had not been going the way he wanted it to, that he had medical problems, and that Cavanagh should get himself another lawyer. He never told Cavanagh that he was going to send him a bill for legal services rendered. Cavanagh received Faerber's bill through his attorney. Since quite a few of the entries were contrary to Cavanagh's memory, he did not pay the bill.

The plaintiff's expert witness, Joseph Macioci, testified that in his opinion the bill was an extremely fair and reasonable one in light of the complexity of the case, the substantial piece of property involved, the number of court appearances, the number of conferences Faerber had with Cavanagh and Mrs. Cavanagh's attorney, and the number of telephone calls back and forth. Apparently the jury agreed that the bill was fair and reasonable because it returned a verdict in favor of Faerber on October 26, 1987. The defendant filed a motion for a new trial on November 6, 1987, and the motion was denied on November 23, 1987. The defendant's notice of appeal was filed on December 11, 1987.

The issue on appeal concerns defendant's pretrial motion for leave to file a counterclaim pursuant to Rule 13(f) of the Superior Court Rules of Civil Procedure. The counterclaim, filed in October 1984, alleged that *as a* result of the negligence of plaintiff, defendant had suffered the loss of his business and his assets and had suffered severe emotional distress. He asked for damages in the amount of $50,000. The motion was denied in January 1985. Although the trial justice did not give his reasons for denying the counterclaim, we find that he was justified in doing so.

■ We agree with defendant's classification of this counterclaim as compulsory. A compulsory counterclaim arises from the same transaction or occurrence that is the subject matter of plaintiff's complaint and does not require the presence of third parties over whom the court cannot acquire jurisdiction for its adjudication. If not pleaded, a defendant will be barred from further litigating the claim. Super. R. Civ. P. 13(a); *see also Serra v. Ford Motor Credit Co.,* 463 A.2d 142, 149 (R.I.1983). Since this counterclaim clearly arose out of the same transaction or occurrence and the presence of third parties is not necessary for its adjudication, it is compulsory.

■ The defendant articulated Rule 13(f) as the procedural vehicle for his motion. The rule provides:

"When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."

Cavanagh argued that he omitted the counterclaim because he was acting pro se at the time and was suffering from severe emotional and financial difficulties. He stated that since he could not afford an attorney, he was unaware of the procedure.

The authority of the court to allow amendments to pleadings lies within Rule 15(a). Such amendments are not a matter of right but rest within the sound discretion of the trial court. *Ringuette v. Superior Court,* 88 R.I. 218, 220, 145 A.2d 359, 360 (1958); *see also Inleasing Corp. v. Jessup,* 475 A.2d 989, 992 (R.I.1984) (citing *Ricard v. John Hancock Mutual Life Insurance Co.,* 113 R.I. 528, 540, 324 A.2d 671, 677 (1974)).

We have consistently interpreted Rule 15(a) to allow trial justices to grant amendments to the pleadings liberally if justice so

requires. *See Serra,* 463 A.2d at 150 (and cases cited therein). In the case before us, however, we find that the trial justice appropriately exercised his discretion in denying defendant's counterclaim.

The defendant points out that in *Serra* this court stated that "when an omitted counterclaim is compulsory in nature, justice requires that it be allowed by amendment under Rule 13(f) even if the omission was through inexcusable neglect, as long as the opposing party would not be prejudiced by such an allowance. 1 Kent, § 13.8 at 133–34." 463 A.2d at 150. We find in the instant case, without having to remand it to the factfinder, that Faerber would have been prejudiced if defendant had been permitted to amend the pleadings twelve years after the complaint was first filed.

Since Rule 15(a) is modeled after the Federal Rules of Civil Procedure, we look to Moore's *Federal Practice* ¶ 15.08(4) for guidance.

> "The most common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose, or that the party has had sufficient opportunity to state a claim and has failed." 3 Moore's, *Federal Practice* ¶ 15.08(4) at 15–69–15–75 (2d ed.1988).

The question of prejudice to the party opposing the amendment is central to the investigation into whether an amendment should be granted. In *Serra,* we reversed the trial justice's decision denying the defendant's motion to amend, relying on the fact that the plaintiff would not have been prejudiced by the allowance of the defendant's motion at midtrial. *Serra,* 463 A.2d at 150. In *Serra,* however, the complaint was filed in 1980, and a nonjury trial resulted in a judgment a few months later. *Id.* at 144. In the instant case the initial complaint was filed some twelve years before the counterclaim. Although we have ruled that mere delay is not enough to deny the amendment, *Inleasing Corp. v. Jessup,* 475 A.2d at 992, undue and excessive delay that causes prejudice to the opposing party is grounds for denial. *See* 3 Moore's, *Feder-*

*al Practice* ¶ 15.08(4); *see also Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 139 (1st Cir.1985); *Carter v. Supermarkets General Corp.,* 684 F.2d 187, 192 (1st Cir. 1982). Moreover, the trial justice's discretional authority to deny amendments to pleadings when delay is involved must always be placed within the scope of the spirit of the Superior Court Rules of Civil Procedure: "They shall be construed to secure the just, speedy, and inexpensive determination of every action." Super. R. Civ. P.1.

With respect to undue delay, the First Circuit noted in *Carter* that when "a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some 'valid reason for his neglect and delay.'" *Carter,* 684 F.2d at 192 (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967)). In *Carter* the plaintiff waited six years after filing her complaint alleging employment discrimination before filing for an amendment to add a Title VII claim. She attributed the delay to inadvertence and "clerical error," but the court suggested that this explanation was not enough and upheld the Massachusetts District Court's decision to deny the plaintiff's motion to amend. 684 F.2d at 192. The court pointed out that Carter's delay was almost entirely her own doing, in contrast to a case, for example, wherein an amendment would be acceptable because the delay was caused by the court. In addition, the delay caused prejudice to the defendant in the case because witnesses had dispersed and the store in which the plaintiff had been employed had been closed for some years. *Id.*

In the case before us Cavanagh offers as an explanation for the delay in filing his counterclaim that he was representing himself when he answered the complaint and was suffering from severe emotional and financial difficulties rendering him unaware of the proper procedure.

Although Cavanagh was acting pro se when he filed an answer to the complaint, and embroiled in a complex and lengthy

divorce (which came before this court several times on numerous issues), he is not entitled to delay a counterclaim for twelve years in this related but entirely separate lawsuit between him and Faerber, the first attorney to represent him in the divorce matter.[2] Looking to the court's decision in *Carter* for guidance, we find that a wait of twelve years constitutes undue and excessive delay. Cavanagh's explanation regarding the reasons for delay is simply not sufficient. Even if a litigant is acting pro se, he or she is expected to familiarize himself or herself with the law as well as the rules of procedure. It appears from the record that in the twelve years before his motion for counterclaim was filed, Cavanagh certainly had ample access to sound legal advice. The trial justice of the Superior Court did not abuse his discretion. His authority to deny the counterclaim was without a doubt within the spirit of the Superior Court Rules of Civil Procedure. He was entitled to deny the counterclaim to secure the just, speedy, and inexpensive determination of the action. *See* Super. R. Civ. P.1.

In addition the litigation of the counterclaim twelve years after the complaint was filed would have caused substantial prejudice to plaintiff since it would have involved a considerable amount of new discovery. Assessment of Faerber's negligence would have necessarily involved an investigation of Cavanagh's subsequent counsel and would have forced this court to review a substantial part of Cavanagh's divorce action. In light of the complexity and length of the divorce action, litigation of the counterclaim would have been an unfair burden on plaintiff and would have caused him substantial prejudice if asked to do so twelve years after the complaint was filed.

Moreover, the First Circuit has noted; "An addition of a new claim close to trial when discovery is essentially complete and trial strategy already planned invariably delays the resolution of a case, and delay itself may be considered prejudicial * * * especially where excessive delay has already occurred." *Andrews,* 780 F.2d at 139.

In this case Cavanagh filed his motion for a counterclaim on October 25, 1984, the date the case was first assigned to the civil trial calendar in Superior Court. We cannot ignore the fact that if Cavanagh's motion had been granted, it would have added to the delay already sustained in this case. Any more delay in deciding this case is unnecessary. The motion for leave to file a counterclaim was unduly delayed and, if granted, would have caused substantial prejudice to the plaintiff.

For the reasons stated above, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court for entry of judgment for the plaintiff.

---

**2.** The record indicates that Cavanagh was represented by at least six attorneys after he dismissed Faerber. He was also involved in litigation regarding attorney's fees with Faerber's successor.