James VINCENT, Administrator of the
Estate of Kerry Vincent

v.

Joseph MUSONE and Patricia Musone
d/b/a National Liquor.

No. 88-61-Appeal.

Supreme Court of Rhode Island.

April 5, 1990.

Christine L. McBurney, Pawtucket, for plaintiff.

Lauren E. Jones, Jones Associates, Providence, William L. Bernstein, Greenville, Robert M. Brady, Alan T. Dworkin, Dworkin & Brady, Warwick, for defendants.

OPINION

KELLEHER, Justice.

This is the defendants' appeal from a judgment entered in favor of the plaintiff on a jury verdict. The plaintiff, James Vincent, acting as administrator of his son Kerry Vincent's estate, filed a complaint in the Providence County Superior Court against the defendants, Joseph and Patricia Musone d/b/a National Liquor. The initial complaint contained a wrongful-death claim, alleging that the defendants negligently furnished alcohol to William West (West), and as a result of this act, the plaintiff's son was shot and killed. On the first day of trial, the plaintiff was allowed to add a second cause of action based upon G.L.1956 (1976 Reenactment) § 3-11-1,[1]

and is now codified at chapter 14 of title 3.

---

1. General Laws 1956 (1976 Reenactment) § 3-11-1 was repealed by P.L.1986, ch. 537, § 1

commonly referred to as the Dram Shop Act.

The trial justice granted a directed verdict on the claim based on the Wrongful Death Statute, and judgment was entered on the dram-shop claim. The Dram Shop Act provides in pertinent part:

"Liability of furnisher of beverages for injuries by intoxicated persons.—If any person in a state of intoxication commits any injury to the person or property of another, the person who furnished him with any part of the beverage which occasioned his intoxication, if the same was furnished in violation of this title, shall be liable to the same action by the party injured as the person intoxicated would be liable to * * *."

This controversy involves an incident that occurred on March 26, 1982. On that evening four friends, West, David Ruel (Ruel), James Donahue (Donahue), and the decedent, Kerry Vincent (Vincent), drove around the city of Pawtucket in Ruel's automobile with no specific destination in mind. These four young men were between eighteen and nineteen years of age on March 26, 1982. The legal drinking age was twenty years; therefore, they were "underage" pursuant to G.L.1956 (1976 Reenactment) § 3–8–6, as amended by P.L. 1980, ch. 142, § 2.[2]

At trial West testified that on the evening of March 26, 1982, he drank approximately five beers at his home before Ruel arrived sometime between 5 and 6 p.m. West and Ruel then went to defendants' liquor store, National Liquor, which is located at the corner of Cottage Street and Newport Avenue in Pawtucket. West testified that he had been getting served at National Liquor for over a year.[3] He stated that he bought two six-packs of beer from defendant Joseph Musone. West and Ruel proceeded to drive around Pawtucket while they consumed the beer they had just purchased. They drove to the home of their friend Donahue to pick him up at approximately 7 p.m. The trio drove around for a short period, and they eventually went to Tolman High School where they met Vincent. Lacking an itinerary, the foursome continued driving around in Ruel's car and eventually returned to National Liquor at approximately 8 p.m.

West testified that he was again served by defendant Joseph Musone. He purchased a six-pack of beer for himself, a six-pack for Ruel, and an eight-pack for Vincent. He also bought a pint of Yukon Jack whiskey to split between himself and Vincent. West testified that he was feeling intoxicated at that point because he had finished the six-pack he had bought on the first trip.

They resumed their travels and encountered some friends in front of a liquor store on Armistice Boulevard. Their friends were in search of equipment to tap kegs of beer, and West volunteered to assist them in procuring a tap. The group returned to National Liquor for the third time, and West, accompanied by James Wood (Wood), rented a tap from Joseph Musone. West testified that Musone commented that "I was one of his best customers and that I still needed a keg of beer to get drunk because I was coming back and forth so many times."

After their final trip to National Liquor, the foursome continued driving around until West vomited in the car. At this point, approximately 10 p.m., Ruel drove to West's home to drop him off. Donahue, who did not drink any alcohol that evening, testified that Vincent playfully poured a drop of beer onto West's neck. West, apparently not amused, threw half his beer at Vincent. A wrestling match between Vin-

**2.** As originally adopted by P.L.1980, ch. 142, § 2, G.L.1956 (1976 Reenactment) § 3–8–6 initially raised the lawful drinking age to nineteen (effective July 1, 1980) and then to twenty (effective July 1, 1981). By amendment in 1984, P.L.1984, ch. 191, § 1, the lawful age was set at twenty-one.

**3.** West testified that he had been asked for identification a few times at National Liquor. The identification he produced was a Rhode Island driver's license with his correct date of birth, April 15, 1963, but which was color coded to indicate that he was of legal drinking age.

cent and West ensued, and then West punched Donahue in the face. Donahue responded by restraining West in a "headlock," and Vincent said, "Bill, it wasn't Jimmy, it was me." West then ran into his house, and Vincent followed him moments later, apparently to apologize. Ruel and Donahue remained by the car. As Vincent got to the porch of the house, West emerged with a shotgun.

According to Donahue, Vincent grabbed the gun but West wrenched it away and shot at a tree on the other side of the street a couple of times. Having exhausted his ammunition, West allowed Vincent to take the gun. Vincent "jokingly" pointed the barrel at West and pulled the trigger a few times. Vincent then handed the gun back to West. West retreated into the house, and Vincent returned to the car and climbed into the back seat. As they were driving away, West reappeared on the porch and fired a shot at Ruel's car which hit Vincent. Donahue testified that he heard a bang and noticed the rear window was blown out. Vincent, he testified, had a very surprised look on his face, and then he slumped over.

Vincent was pronounced dead at 10:41 p.m. West was arrested later that evening. He eventually pleaded guilty to and was convicted of Vincent's homicide. He is currently serving a sentence for manslaughter at the Adult Correctional Institutions.

Joseph Musone disputed much of the testimony of West and his friends. He testified that on March 26, 1982, he knew West only by sight and that he never served any alcoholic beverages to West. He stated that West had come into the store several times with a friend, and it was the friend who purchased alcohol. Musone also testified that on the night in question he worked from 5:45 to 6:45 p.m. and then left to go out for the evening with his wife. He testified that West and Wood came into National Liquor to rent a tap sometime between 6 and 6:30 p.m.

The defendants, Joseph and Patricia Musone, raise a number of issues on appeal. We shall first address the issue of whether the trial justice abused his discretion in granting plaintiff's motion to amend his complaint to include a cause of action under the Dram Shop Act on the first day of trial. The trial justice asked plaintiff's counsel to explain the reason for the late addition of the dram-shop claim, and plaintiff's counsel responded, "The dram shop was later added by us as causable negligence." The defendants' counsel objected to the amendment on the basis that defendants would be prejudiced because the discovery was geared toward a claim brought under the Wrongful Death Statute. The defendants' counsel also indicated that under a dram-shop claim, he would have had a greater concern for the amount of alcohol West drank the night of the incident. He also stated that he would have brought in West's mother, who had provided alcoholic beverages to West before he went out with Ruel on the evening of March 26, 1982.

The trial justice granted plaintiff's motion to amend, stating, "In this case, the strong potentiality that eventually a dram shop claim would be brought ought to have flashed clearly in the defendant's mind * * * and the Court has not been made aware of such prejudice as to not permit the plaintiff here to assert the claim that they bring as a dram shop claim."

The amendment of pleading in this jurisdiction is governed by Rule 15 of the Superior Court Rules of Civil Procedure. Pursuant to Rule 15(a), "The granting or denial of such a motion is a matter within the sound discretion of the trial justice, and when he has acted in the exercise of his discretion, his ruling should not be disturbed on review in the absence of a clear showing that he abused his discretion." *Ricard v. John Hancock Mutual Life Insurance Co.*, 113 R.I. 528, 540, 324 A.2d 671, 677 (1974). In *Foman v. Davis*, 371 U.S. 178, 187, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962), the Supreme Court reaffirmed the mandate of Rule 15(a) that leave to amend shall be " 'freely given when justice so requires.' "

■ This court recently addressed an issue involving a motion to amend the pleadings pursuant to Rule 15(a) in *Faerber v. Cavanagh*, 568 A.2d 326 (R.I.1990). Since

Rule 15(a) is modeled after the Federal Rules of Civil Procedure, in *Faerber* we looked to Moore's *Federal Practice* ¶ 15.08(4) for guidance. "The most common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose, or that the party has had sufficient opportunity to state a claim and has failed." 568 A.2d at 329 (citing 3 Moore's *Federal Practice* ¶ 15.08(4) at 15–69–15–75 (2d ed.1988)). We found that the trial justice appropriately exercised his discretion in denying the defendant's counterclaim when the initial complaint was filed approximately twelve years before the counterclaim and allowance of the counterclaim would have caused substantial prejudice to the plaintiff. 568 A.2d at 329.

We have recognized that mere delay is an insufficient ground for denial of an amendment, *Inleasing Corp. v. Jessup*, 475 A.2d 989, 992 (R.I.1984); however, "undue and excessive delay that causes prejudice to the opposing party is grounds for denial." *Faerber*, 568 A.2d at 329 (citing 3 Moore's *Federal Practice* ¶ 15.08(4)); *see also Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 139 (1st Cir.1985), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986); *Carter v. Supermarkets General Corp.*, 684 F.2d 187, 192 (1st Cir.1982).

In the case at bar plaintiff neglected to file an amended complaint to add a dramshop claim until the first day of trial, almost five years after he filed his initial complaint. The plaintiff's counsel has represented that the failure to include a claim under the Dram Shop Act was the result of an oversight. The First Circuit has held, "While courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party * * * where * * * a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some 'valid reason for his neglect and delay.'" *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19–20 (1st Cir.1979) (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967)). Following this reasoning, in *Carter v. Supermarkets General Corp.*, 684 F.2d at 192, the First Circuit upheld the trial justice's denial of the plaintiff's motion to amend in a situation in which the plaintiff waited six years after filing her complaint before filing for an amendment to add an additional claim. The court found that the plaintiff's explanation that the delay was attributable to inadvertence and "clerical error" was insufficient and that the defendant was prejudiced because the business establishment involved in the suit had been closed for some years and the witnesses had dispersed. *Id.* The court pointed out that the plaintiff's delay was almost entirely her own doing and, therefore, was distinguishable from cases wherein an amendment would be justified because the delay was caused by the court. *Id.*

Although we acknowledge that a trial justice is entitled to broad discretion under Rule 15, this discretion is not unlimited. In granting plaintiff's motion to amend, the trial justice articulated that defendant should have anticipated that eventually a dram-shop claim would be brought. It is our opinion that the trial justice's reliance on this reasoning is inappropriate. Instead, the trial justice should have focused on plaintiff's "extraordinarily long and essentially unexplained delay." *Carter*, 684 F.2d at 192. "As a general rule, the risk of substantial prejudice increases with the passage of time. * * * Delay in moving to amend also increases the risk that the opposing party will not have an adequate opportunity to prepare his case on the new issues raised by the amended pleading." 6 Wright, Miller and Kane, *Federal Practice and Procedure:* Civil 2d § 1488 at 670–71 (1990). The plaintiff in this action was apprised of all the facts supporting a dramshop claim at the time the original complaint was filed and yet waited until the day of trial to assert this claim. The record discloses that plaintiff has failed to show any " 'valid reason for his neglect and delay.' " *Hayes*, 602 F.2d at 20.

We believe the trial justice erred in finding that defendants, Joseph and Patricia

Musone, suffered no prejudice as a result of plaintiff's amendment of his complaint on the first day of trial. The record reveals that defendants did suffer prejudice by the addition of the dram-shop claim, a statutory theory of liability, on the first day of trial. The dram-shop claim, no matter how factually similar to the wrongful-death claim, set forth a legally distinct theory of liability. The amendment to the complaint compelled defense counsel to formulate an instant defense and trial strategy to deal with this new cause of action. The defendants were prejudiced because this late amendment precluded the defense from pretrial discovery relative to this new strategy and theory.

This court is of the opinion that the trial justice's disregard of the obvious prejudice to the defendants was an abuse of his discretion. The prejudice could have been effectively remedied had the trial justice granted a continuance or postponement of the trial. This action would have afforded defense counsel sufficient opportunity to prepare for trial and would have been consistent with the spirit of Rule 15. In *Kenney v. Providence Gas Co.*, 118 R.I. 134, 140, 372 A.2d 510, 513 (1977), we observed that the unquestionable purpose of Rule 15 "is to afford a litigant a reasonable opportunity to have his claim tried on the merits rather than a procedural technicality." Accordingly, we find that justice is served in this controversy by vacating the jury's verdict and remanding the case for a new trial on the dram-shop count. We believe that justice would also be served by an award of a counsel fee to defense counsel because of the undue delay of the plaintiffs' counsel in seeking to amend their complaint.

For the reasons stated, the defendants' appeal is sustained and the judgment appealed from is vacated. The case is remanded to the Superior Court for a new trial. However, the plaintiff shall be required to pay the reasonable expenses incurred by the defendants in connection with the first trial, including a reasonable counsel fee. Upon remand a justice of the Superior Court shall determine the reason-able costs of representing the defendants at the initial trial, including the reasonable cost of preparation. The fee and costs shall be paid as a condition precedent to scheduling a new trial.