**CONNECTICUT VALLEY HOMES
OF EAST LYME, INC.**

v.

**Raymond BARDSLEY et al.**

**No. 2003–0513–Appeal.**

Supreme Court of Rhode Island.

Feb. 15, 2005.

Michael P. Lynch, Westerly, for Plaintiff.

Donald M. Gregory, II, North Kingstown, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## AMENDED OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on December 8, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. The defendant, Raymond Bardsley (defendant, purchaser, or Raymond), appeals from a judgment in favor of the plaintiff, Connecticut Valley Homes of East Lyme, Inc. (plaintiff or contractor).

### Facts and Travel

This dispute arises from a construction contract (the contract), between the purchaser and the contractor entered into on April 7, 1999, calling for the contractor to deliver and construct a modular single-family home on a parcel that the purchaser owned in the town of Exeter. The contract provided that the purchaser would make his final payment on the outstanding balance of the total contract price of $212,375 to the contractor "in full on the day the house is set onto the foundation." Paragraph 10 of the contract provided that time was of the essence. The purchaser, however, was dissatisfied with the contractor's work and, therefore, withheld $5,321 that remained due for labor and services under the contract.

On July 24, 2002, the contractor filed a complaint in Superior Court alleging that Raymond and Mariesol Bardsley (Mariesol or, collectively, defendants) caused harm to the contractor by breaching the contract.[1]

On July 30, 2002, defendants filed a pleading setting forth an answer to plaintiff's complaint and an affirmative defense (the pleading). The first page of the pleading, signed by defendants' attorney, exclusively consists of defendants answer. On the pleadings second page, defendants set forth an affirmative defense as follows:

> "[The contractor] failed to perform certain contract work and specifications in a

---

1. Originally, in March 2001, the contractor filed a notice of mechanic's lien against the property and petitioned the Superior Court to enforce the lien to satisfy the outstanding balance allegedly owed by Raymond Bardsley and Mariesol Bardsley. The trial court granted defendants' motion to dismiss the petition to foreclose the mechanic's lien.

good and workmanlike manner and according to plans and specifications. As a result thereof, [the contractor] has partially breached the subject [c]ontract by failing to perform said work in a good and workmanlike manner."

Although a signature section was provided on the second page of the pleading, defendants' attorney failed to sign that page.[2]

On April 9, 2003, less than one hour before trial,[3] defendants moved to amend their answer to include a new compulsory counterclaim alleging that the contractor breached the contract by supplying interior finish work that "was inferior or incomplete and not performed in a good and workmanlike manner." Although a signature section was provided, defendants' attorney again failed to sign the amended answer.

The trial justice heard arguments concerning defendants' motion to amend the answer and declined to allow it. He reasoned that requiring the contractor to defend against a new counterclaim, including the necessary testimony of an undisclosed expert witness (expert), on such short notice would unfairly prejudice the contractor. The trial justice denied defendants motion to add a counterclaim and refused to hear the testimony of the expert on that issue or on the affirmative defense of breach of contract.[4]

On April 9, 2003, a bench trial was held in Superior Court. The record discloses that defendants offered the testimony of Paul O. Pierce, Jr. (Pierce), a painting and carpentry contractor retained by defen-

dants to inspect the home for "any defects in workmanship and to give [defendants] a quotation as to the amount of money it would cost to fix those defects." The trial justice refused to allow the evidence, apparently on relevance grounds, finding that the only issue before him was whether defendants made payment on the contract.

At the close of evidence, the trial court granted defendants' motion to dismiss the case against Mariesol because she could not be found in breach of a contract to which she was not a party.

On May 1, 2003, after the close of the evidence and the arguments of counsel, but before rendering a decision, the trial justice wrote to counsel (letter to counsel) and expressed his belief that "[s]everal issues have arisen since evidence closed" in this case. He reiterated the correctness of his ruling disallowing the counterclaim but noted that defendant had asserted an affirmative defense of breach of contract by unworkmanlike performance in his original answer. The trial justice called attention to an unsigned page of the pleading that set forth defendant's affirmative defense. He informed counsel that this defect was curable pursuant to Rule 11 of the Superior Court Rules of Civil Procedure and volunteered that, if "that omission in the answer is cured, and defendant moves to reopen his case, I believe that I should reconsider my refusal to hear testimony from [d]efendant's expert as that testimony would be relevant to the issues raised by the affirmative defense." The trial justice wrote:

2. In the record, as it now exists, the second page of the pleading, setting forth defendants' answer and affirmative defense, is signed.

3. The trial justice noted that "[t]his case had been ready trial on 24 hours notice for over six months."

4. In his written decision, the trial justice found that defendants' counsel, during the hearing on defendants motion to amend, "did not proffer [the testimony of the expert witness] as proof of an affirmative defense. In fact, defendants' counsel never even mentioned the unsigned pleading entitled 'First Affirmative Defense.'"

"If I decide that I should hear testimony from defendant's expert, I believe that I can alternatively (a) immediately permit defendant to reopen his case in that I have not reached a verdict, * * * or (b) render a judgment and then *sua sponte* open the judgment and take further evidence before 'amend(ing) findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.' "

Thereafter, the trial justice held an unrecorded chambers conference in which he apparently indicated that he was unaware that defendant had raised an affirmative defense during the trial.

The defendant filed three motions in response to the trial court's invitation. He moved for an order allowing the signature of the affirmative defense; an order allowing him to reopen his case to present evidence relative to his affirmative defense; and an order, pursuant to Rule 8(c) of the Superior Court Rules of Civil Procedure, to treat the affirmative defense as a counterclaim (collectively, posttrial motions). The plaintiff objected to the motions to reopen and to treat the affirmative defense as a counterclaim but did not object to the motion to sign the affirmative defense.

At a posttrial hearing on June 5, 2003, the trial justice allowed defense counsel to sign his original pleading setting forth an affirmative defense. The plaintiff objected to the court's treatment of the affirmative defense as a counterclaim. Counsel argued that the trial justice previously had disallowed the same counterclaim because it was untimely, and he further argued that the trial justice could not now declare that it was mistakenly identified as an affirmative defense. The plaintiff also pointed to the unusual procedural posture of the case—after the close of evidence—and likened the situation to a motion for a new trial. He reminded the court that defendant did not argue an affirmative defense during trial and suggested that by addressing the posttrial letter to counsel, the trial court was acting "as co-counsel for the defendants," inappropriately assisting the defense after the evidence had closed. The defendant responded that the motion to reopen was not a motion for a new trial, that it was made before judgment was entered, and that he had attempted to introduce expert testimony about the quality of the work throughout the trial.

The trial justice announced that he would permit defendant to present additional testimony but had not yet decided whether he would "consider it as 'a proffer' or whether [he would], as requested, allow the defendant to reopen for any purpose," [5] either as "an affirmative defense, counterclaim or merely 'a proffer' so that the record is finally complete." The trial justice then received testimony of defendant and his expert, Pierce, about plaintiff's alleged faulty performance of the contract.

On June 18, 2003, the trial justice, by written "Memorandum Order and Verdict," found in favor of the contractor and awarded $5,321 plus prejudgment interest. The trial justice struck the affirmative defense by deciding that he erred by writing to counsel because "the tribunal should not attempt to cure defects in the advocacy of a party." The trial justice refused to allow defendant to reopen his case, and ruled that the posttrial testimony was "a proffer." He found that the contract required full payment on the date the modular

---

**5.** We assume the term "proffer," as used by the trial justice, means an offer of proof. *See Palazzolo v. Rahill,* 121 R.I. 31, 34–35, 394 A.2d 690, 691–92 (1978) (an offer of proof is a statement of the expected evidence a proponent would attempt to prove).

home was set on the purchaser's foundation and that the purchaser breached the contract by not making full payment on that date.

On appeal, defendant contends that the trial court improperly denied his motion to amend the answer to add a counterclaim because plaintiff failed to show that it would suffer substantial prejudice if the motion were granted. The defendant also argues that the parties' conduct constituted a waiver of the construction contract's "time is of the essence" clause. The defendant further asserts that the trial court improperly struck the affirmative defense.

## The Pleading

 Immediately before the start of trial, defendant moved, under Rule 13(f) of the Superior Court Rules of Civil Procedure, to add a compulsory counterclaim. Rule 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Even when a compulsory counterclaim is omitted through inexcusable neglect, Rule 13(f) requires that an amendment be allowed to include the compulsory counterclaim as long as the amendment would not prejudice the opposing party. *Serra v. Ford Motor Credit Co.*, 463 A.2d 142, 150 (R.I.1983). When a party moves to add a compulsory counterclaim, "[t]he authority of the court to allow amendments to pleadings lies within Rule 15(a)." *Faerber v. Cavanagh*, 568 A.2d 326, 328 (R.I.1990). It is well settled that "[s]uch amendments are not a matter of right but rest within the sound discretion of the trial court." *Id.* We note that, "mere delay is not enough to deny the amendment, * * * undue and excessive delay that causes prejudice to the opposing party is grounds for denial. * * * Moreover, the trial justice's discretional

authority to deny amendments to pleadings when delay is involved must always be placed within the scope of the spirit of the Superior Court Rules of Civil Procedure: 'They shall be construed to secure the just, speedy, and inexpensive determination of every action.'" *Id.* at 329 (quoting Rule 1 of the Superior Court Rules of Civil Procedure).

The trial justice found that it would be prejudicial to plaintiff to allow the amendment and expert testimony on the counterclaim because there was no opportunity for plaintiff to prepare a defense. The trial justice was correct; a motion to amend of this sort, with less than one hour before trial, is inappropriate and untimely. We are convinced that had the trial justice allowed the counterclaim immediately before trial, he would have committed reversible error. However, a review of the record discloses that defendant attempted to present evidence with respect to his affirmative defense and was rebuffed. It is clear that when the trial justice discovered that he had overlooked the affirmative defense in the responsive pleading, he attempted to correct the error. Unfortunately, he failed to do so.

## Letter to Counsel

 After trial, without any provocation by counsel, the trial justice wrote to counsel, advising defendant on a course of action.[6] We note at the outset that the jurisdiction of the Superior Court should not be exercised by letter to counsel. Once the trial justice realized his error in excluding evidence relative to an affirmative defense, he should have reconvened the proceeding, taken new evidence, and issued his written findings on the merits, accepting or rejecting the affirmative defense as he saw fit. Instead, he compounded his error by writing to counsel

6. The record on appeal consisted of a letter that was undated, unsigned and written on unofficial stationary. The record has been corrected with a copy of the actual letter that was sent to counsel.

and suggesting a course of action that only served to further complicate the travel of this case.

## Affirmative Defense

■ The defendant's first responsive pleading in this case consisted of an answer and an affirmative defense. Although defendant's attorney failed to sign the page setting forth the affirmative defense, the first page of the pleading was signed by counsel. Rule 11 provides that "[e]very pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name." Failure to sign the pleading is not fatal to the claim or defense. "If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." *Id.* Thus, once the failure to sign a pleading is raised, the party has a right to sign it promptly and, only if the party fails to sign the pleading, shall it be stricken. Nor does Rule 11 require that every section of the pleading be signed in a specific place but only that the pleading be signed by the attorney of record. We are satisfied that the signature of the attorney of record, without regard to its location on a pleading, fulfills the requirements of Rule 11 and that the pleading satisfied the rule before defendant's counsel affixed his signature to the pleading for the second time.

## The Posttrial Hearing

Although the trial justice conducted an evidentiary hearing on June 5, 2003, and

allowed defendant to present expert testimony consistent with his original offer of proof, he ultimately refused to consider the evidence and struck the affirmative defense.

■ In a "Memorandum Order and Verdict," [7] the trial justice declared that he erred by writing to counsel and permitting defendant's attorney to sign the pleading after the close of evidence. The trial justice reasoned that he had inappropriately engaged in advocacy on the part of defendant. He refused to allow defendant to reopen the case and found that the "evidence in the case is comprised of the testimony and full exhibits submitted on April 9, 2003," and the testimony and exhibits introduced on June 5, 2003, "shall remain a proffer." We deem this error.

■ First, having already received an offer of proof from defendant on the issue of workmanlike performance of the contract, it was incumbent upon the trial justice to decide whether, notwithstanding the offer of proof, the affirmative defense had been waived. If he determined that the affirmative defense had not been waived, then he was vested with the discretion to reopen the case, take additional testimony, and consider the affirmative defense. Although the letter to counsel may not have been sound practice, once the trial justice realized that he had overlooked defendant's affirmative defense, he was correct in bringing that omission to counsel's attention. However, having already refused to allow the counterclaim, the trial justice should not have entertained a motion to reconsider his previous ruling and should

7. A " 'Memorandum Order [and Verdict]' is not a recognized title for a judicially authored document in our state court practice, and we discourage innovations in nomenclature of this sort." *State v. Brown*, 865 A.2d 334 (R.I.2005) (mem.). Rule 52(a) of the Superior Court Rules of Civil Procedure requires entry of a judgment, providing that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *."

not have taken testimony on the chance that he would reconsider his ruling and consider the counterclaim.

When sitting without a jury, a trial justice is vested with broad discretion to hear evidence, pass on the merits of a claim, and to reopen the case and take additional evidence when appropriate. A trial court's exercise of discretion is reviewed to determine whether it "has been soundly and judicially exercised, * * * with just regard to what is right and equitable under the circumstances * * *." *Geloso v. Kenny,* 812 A.2d 814, 817 (R.I.2002) (quoting *Debar v. Women & Infants Hospital,* 762 A.2d 1182, 1185–86 (R.I.2000)). When circumstances require the trial justice to exercise discretion,

"it is the duty of the court to consider and determine that question so that the rights of the parties may be fairly protected in an orderly manner. It is as much an abuse of judicial discretion in refusing to exercise such discretion when warranted by the facts before the court as it is to exercise that discretion improperly by means of a decision that is clearly erroneous on the facts or under the law." *Strzebinska v. Jary,* 58 R.I. 496, 500, 193 A. 747, 749 (1937).

In his letter to counsel, the trial justice indicated that the defective affirmative defense would be cured if defendant's attorney signed the pleading. In his written decision, authored after defendant's counsel signed the pleading, the trial justice found that the affirmative defense had been waived during defendant's case-in-chief. Yet, later in that decision, satisfied that he erred by writing to counsel, he struck the affirmative defense and refused to allow defendant to reopen his case. Thus, although at one point the trial justice considered the affirmative defense to be procedurally and substantively sufficient, he later declared that it had been waived and, finally, because of what he characterized as improper judicial advocacy, he ordered it stricken. We are satisfied that the trial justice erred by striking the affirmative defense. Our review of the record discloses that defendant attempted to prove that plaintiff had not fully performed the contract.

When the trial justice wrote to counsel, although the evidence was closed, he had not yet issued his decision. Clearly, in a jury-waived case, the trial justice was vested with broad discretion to permit defendant to reopen his case in order to consider the affirmative defense. The testimony comprised seventy pages of transcript and included extensive examination of the expert witness by both parties.

By allowing this testimony in a jury-waived case, the trial justice did reopen the case, and his subsequent refusal to allow defendant to reopen the case was meaningless. By rejecting the expert's and Raymond's testimony presented at the posttrial hearing, the trial justice committed an abuse of discretion. At that point in this rather bumpy travel, the trial justice should have considered the merits of the affirmative defense; we deem his refusal to do so to be error.

If admitted into evidence, the combined testimony of the expert and Raymond would support the affirmative defense. Relevant evidence is generally admissible but may be excluded under certain recognized exceptions. *State v. Jackson,* 752 A.2d 5, 10 (R.I.2000). The trial justice did not base his exclusion of Raymond's or the expert's testimony on any rule of evidence or on the basis of waiver, and therefore, its exclusion was erroneous.

Accordingly, we vacate the judgment and remand this case to the trial justice with directions to consider the evidence in light of the defendant's affirmative de-

fense. Consistent with his broad discretion in a jury-waived trial, the trial justice may accept or reject the affirmative defense and issue a new judgment.

Because of our disposition of these issues, we need not reach the defendant's remaining assignment of error.

### Conclusion

We vacate the judgment of the Superior Court and remand this case to the trial justice for a new judgment based on an amended decision, in which the trial justice considers, but is not bound by, the defendant's affirmative defense.